J-S06045-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: L.F.F., M.F.I.F.F. AND J.D.L., MINOR CHILDREN | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: S.M.L., MOTHER | No. 2756 EDA 2014 |

Appeal from the Decrees entered August 15, 2014,
in the Court of Common Pleas of Northampton County, Orphans'
Court, at No(s): 2014-0009

BEFORE: BENDER, P.J.E., LAZARUS, and FITZGERALD*, JJ.

MEMORANDUM BY FITZGERALD, J.: **FILED JULY 21, 2015**

This case returns to this Court following our remand for the trial court to complete an analysis of the nature of the parent-child bond, pursuant to 23 Pa.C.S. § 2511(b), and the effect on L.F.F., M.F.I.F.F. and J.D.L., ("Children") of permanently severing that bond. Additionally, the trial court was to provide an analysis of its reason for changing the permanency goal to adoption pursuant to 42 Pa.C.S. § 6351. We incorporate our prior memorandum decision in ***In the Interest of: L.F.F., M.F.I.F.F., and J.D.L., Minor Children***, 2756 EDA 2014 (unpublished memorandum) (Pa. Super. April 17, 2015).[1] We affirm.

Mother argues Northampton County Division of Children, Youth and Families ("CYF") has "not met its burden concerning 2511(b)." Appellant's Supplemental Brief at 4. Mother contends there is a bond between her and

---

* Former Justice specially assigned to the Superior Court.

[1] In our prior memorandum, we disposed of Mother's remaining issues.

Children, and therefore termination of her parental rights would not serve the needs and welfare of Children. *Id.* at 5; Mother's Brief at 13.

Our review is governed by the following principles.

> When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that we would give to a jury verdict. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

*In re B.L.W.*, 843 A.2d 380, 383 (Pa. Super. 2004) (*en banc*) (citations omitted).

Section 2511(b) provides:

> **(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(b). With regard to Section 2511(b), this court has stated:

> Once the statutory requirement for involuntary termination of parental rights has been established under

subsection (a), the court must consider whether the child's needs and welfare will be met by termination pursuant to subsection (b). In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship.

*In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010) (citations omitted). This Court has explained that the focus in terminating parental rights under Section 2511(a) is on the parent, but it is on the child pursuant to Section 2511(b). *In re Adoption of C.L.G.*, 956 A.2d 999, 1008 (Pa. Super. 2008) (*en banc*). In analyzing the parent-child bond, the court is not required to order that an expert perform a formal bonding evaluation. *In re K.K.R.-S.*, 958 A.2d 529, 533 (Pa. Super. 2008).

> While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child. The mere existence of an emotional bond does not preclude the termination of parental rights. *See In re T.D.*, 949 A.2d 910 (Pa. Super. 2008) (trial court's decision to terminate parents' parental rights was affirmed where court balanced strong emotional bond against **parents' inability to serve needs of child**). Rather, the orphans' court must examine the status of the bond to determine whether its termination "would destroy an existing, necessary and beneficial relationship."
>
> > [I]n addition to a bond examination, **the trial court can equally emphasize the safety needs of the child**, and should also consider the intangibles, such as the **love, comfort, security, and stability the child might have with the foster parent**. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child

> bond can be severed without detrimental effects on the child.

***In re N.A.M.***, 33 A.3d 95, 103 (Pa. Super. 2011) (some citations omitted and emphases added).

This Court has stated:

> When we review a trial court's order to change the placement goal for a dependent child to adoption, our standard is abuse of discretion. . . . We are bound by the trial court's findings of fact that have support in the record. The trial court, not the appellate court, is charged with the responsibilities of evaluating credibility of the witnesses and resolving any conflicts in the testimony. In carrying out these responsibilities, the trial court is free to believe all, part, or none of the evidence. When the trial court's findings are supported by competent evidence of record, we will affirm even if the record could also support an opposite result.
>
> Next, we note that in matters of placement for a dependent child, the trial court must be guided by the best interests of the child—not those of his or her parents.
>
> Placement of and custody issues pertaining to dependent children are controlled by the Juvenile Act[, which] place the focus of dependency proceedings, including change of goal proceedings, on the child. Safety, permanency, and well-being of the child must take precedence over all other considerations, including the rights of the parents.
>
> At each review hearing for a dependent child who has been removed from the parental home, the court must consider the following, statutorily-mandated factors:
>
> > the continuing necessity for and appropriateness of the placement; the extent of compliance with the service plan developed for the child; the extent of progress made towards alleviating the circumstances which necessitated the original placement; the appropriateness and feasibility of the current placement goal for the child; and, a likely date by

> which the goal for the child might be achieved. [42 Pa.C.S. § 6351(f)].
>
> \* \* \*
>
> When the child welfare agency has made reasonable efforts to return a foster child to his or her biological parent, but those efforts have failed, then the agency must redirect its efforts towards placing the child in an adoptive home. This Court has held that the placement process should be completed within 18 months.

*In re A.K.*, 936 A.2d 528, 532-33 (Pa. Super. 2007) (some citations omitted).

In the case *sub judice*, the trial court concluded that termination of Mother's parental rights was in Children's best interest and changed the goal to adoption. Specifically, the court found:

> In the instant case, . . . Children's welfare would be best served by the termination of Mother's parental rights. . . . Children have been outside of Mother's care since 2011 when J.D.L. was two years old and M.F.I.F.F. was three months old.[2] Mother has not cared for the youngest child, L.F.F., since he was six weeks old. Thus, Mother has not cared for the elder two Children in four years, and the youngest for three years. Her last visit with . . . Children was in November 2013. Mother simply has not been in . . . Children's lives enough to have a bond that would be destroyed by termination. Moreover, even if there were a bond between Mother and Children, Mother placed her romantic relationships before the safety needs of . . . Children by continually pursuing contact with Father 2, despite being aware of his indecent assault against Mother's oldest child, A.T.

---

[2] Rebecca Sager, a caseworker with CYS, testified that CYS secured custody of Children on February 15, 2011, because of a domestic violence incident the previous evening. N.T., 7/15/14, at 91. On February 24, 2011, there was an adjudication hearing declaring Children dependent. *Id.* at 92.

Consequently, . . . Children would not be negatively impacted by termination. They are placed together in a loving, safe and stable foster home, in which their special needs are being met. Mother has not met . . . Children's developmental, physical, or emotional needs. . . . Children's primary bonds are to the foster family. . . . The bond between . . . Children and foster parents is the primary bond to protect, given . . . Children's young age and limited contact with Mother. Here, all of . . . Children's needs are being fulfilled by the foster family, which seeks to adopt . . . Children.

Based on the foregoing, this [c]ourt also changed the permanency goal for . . . Children to adoption. As noted above, . . . Children have been in foster care for most of their lives. Mother failed to complete the services provided by [CYS] and placed . . . Children in danger by continuing contact with Father 2. The circumstances that led to . . . Children's placement in 2011 and 2012 continued to exist without progress by the biological parents. . . . Children are now placed together with a loving foster family that seeks to adopt them. It is in the best interests of . . . Children to be adopted by their foster family.

Trial Ct. Op., 4/21/15, at 1-2 (citations omitted). We agree no relief is due.

Our review of the record supports the trial court's findings pursuant to the parent child bond and change of goal to adoption. The record reveals Mother violated a condition of her probation by having contact with Father 2, who sexually abused Mother's oldest son, A.T.[3] N.T., 7/15/14, at 23-25, 29, 75. Her probation was revoked and she was resentenced to 12-24 months' imprisonment. *Id.* at 31.

Krista Welter, a licensed professional counselor, testified Mother

---

[3] A.T.'s date of birth was April 23, 2005. *Id.* at 76. A.T.'s father is not a party in the instant case. *Id.* A.T. was removed from Mother's care on February 15, 2011.

reported having a lengthy history of domestic violence, that [Father 2] perpetrated abuse on her directly. There was an incident where he was abusive to one of her sons —I believe [J.D.L.]— when she was present in the room. There were also allegations of sexual assault that he was convicted of criminally . . . . However, [Mother] continued to not believe that [Father 2] did that to her son.

*Id.* at 40-41. Ms. Welter was asked the role in the treatment process the acknowledgement of domestic violence plays in the assessment of a parent's ability to protect their children. She stated:

It's a very important component. If an individual continues to deny or excuse or minimize the behaviors perpetrated by, in this case, [Father 2], it becomes difficult for her to be able to protectively parent her children. For example, if she doesn't believe that he's a danger to herself or others, she wouldn't put in safety guards that are needed to make sure her children are safe.

*Id.* at 42. Ms. Welter did not think Mother ever expressed an understanding of the trauma Father 2 caused her son or how the domestic violence affected her Children. *Id.* at 46. Ms. Welter found Mother to be an unsafe parent and could not recommend her serving in a parental capacity for Children. *Id.* at 47.

We find the trial court did not abuse its discretion in determining that the termination of Mother's parental rights would be in the best interests of Children and in changing the goal to adoption. *See In re N.A.M.*, 33 A.3d at 103; *In re Z.P.*, 994 A.2d at 1121; *In re C.L.G.*, 956 A.2d at 1008; *In re A.K.*, 936 A.2d at 532-33; *In re B.L.W.*, 843 A.2d at 383.

For all the foregoing reasons, we affirm the trial court's decrees granting the petitions to terminate Mother's parental rights and changing the Children's goals to adoption.

Decrees affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/21/2015